IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SETH BURRILL PRODUCTIONS, INC., | ) | No. 34401-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REBEL CREEK TACKLE, INC., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Rebel Creek Tackle, Inc. (Rebel) appeals the trial court's order appointing a receiver at the request of Seth Burrill Productions, Inc. (Burrill), whose now $100,000-plus judgment against Rebel remains unsatisfied after almost four years. The trial court did not abuse its discretion in granting Burrill's motion to appoint a receiver authorized to engage in an orderly sale of Rebel's intellectual property—the only significant asset it revealed in supplemental proceedings.

No. 34401-1-III
*Seth Burrill Productions, Inc., v. Rebel Creek Tackle, Inc.*

We affirm the order appointing the receiver, affirm the trial court's refusal to entertain Rebel's postjudgment claim to setoffs, award Burrill reasonable fees and costs on appeal, and remand for further proceedings.

FACTS AND PROCEDURAL BACKGROUND

Rebel granted Burrill an exclusive license to produce and distribute a patented fishing lure, "Bud's Diver," in exchange for royalties on each sale. When Rebel later attempted to alter the nature of the licensing agreement from exclusive to nonexclusive, Burrill demanded arbitration, which is required by the parties' license agreement. The arbitrator found Rebel had breached the license agreement, awarded Burrill $66,367.62 in damages, and ordered Rebel to deliver to Burrill the patented molds needed to produce the fishing lure.

This action was commenced to confirm the arbitration award. A judgment and order confirming the award and order to deliver the molds was entered in June 2013.

When Rebel refused to deliver the molds as ordered, the trial court found Rebel in contempt. Rebel appealed, and in an unpublished opinion, this court affirmed the trial court and awarded Burrill costs and attorney fees, finding the appeal "completely without merit." *Seth Burrill Prods., Inc. v. Rebel Creek Tackle, Inc.*, No. 32119-3-III, slip op. at 1, 5-6 (Wash. Ct. App. July 7, 2015) (unpublished), https://www.courts.wa.gov/opinions /pdf/321193.unp.pdf.

2

In addition to encountering difficulty obtaining the molds, Burrill was unable to collect its judgment. Shortly after the judgment was entered, Burrill offered to forgo a portion of the judgment amount and release other claims against Rebel in exchange for partial payment of the judgment and assignment of the molds, the Bud's Diver Patent No. 7,654,031, and Patent Application 12/641,291 (Publication No. 2010/0223834). It also stated it wanted to conduct a debtor's exam and, if necessary, would travel to Benton County (where we assume Rebel's shareholders, Allen and Dorothy Osborne reside). Rebel, which contends the patent alone is worth over $12 million, had no interest in the offer, so in late July 2013, Burrill filed an abstract of its judgment in Benton County Superior Court.

In late October 2013, Burrill reiterated its July offer, this time indicating it would accept two-thirds of the judgment amount along with an assignment of the molds, the patent, and the patent application in full settlement of all claims. Again, Rebel expressed no interest.

In November 2013, Burrill moved in Benton County for an order authorizing supplemental proceedings to determine the extent of Rebel's nonexempt property available to satisfy the judgment. An order authorizing discovery, including a debtor's exam, was entered in December. Examinations of Mr. Osborne were scheduled three times (twice in January and once in February 2014) but were repeatedly postponed and never occurred due to Mr. Osborne's medical condition.

3

Meanwhile, in late December 2013, Burrill served Rebel with written discovery authorized by the Benton County court. Rebel's responses indicated it did not have a current bank account, an insurance policy, a corporate minute book, or financial statements and had not filed income tax returns or made a profit between 2010 and 2013. Rebel reported that its only assets were the Bud's Diver molds, the associated patent and patent application, its license agreement with Burrill and an application for rights in Canada and the European Union.

Burrill became concerned during 2014 and 2015 that Rebel was not taking steps to preserve the value of the patent and patent application. In July 2013, Burrill learned that Rebel received a notice of abandonment of its Patent Application 12/641,291 from the U.S. Patent and Trade Office for failure to respond to a letter from that office. Although both parties recognized the abandoned application could be revived, Burrill was less sanguine than Rebel about prospects for revival as time passed without action being taken.

On January 2, 2014, lawyers for Rebel and Burrill exchanged e-mails in which Rebel confirmed there was no money in Rebel's account and stated that Burrill was "going to not get any money" and would have to "hire attorneys who know how to continue the patent and application." Clerk's Papers (CP) at 67. During the same time frame, mandatory maintenance fees became due to the Patent and Trade Office. Rebel's lawyer notified Burrill's lawyers that his client had "no motivation to protect [intellectual

property]" as things stood, and suggested that Burrill's lawyers "devine [sic] an offer that would put [Rebel] in the mode of securing [intellectual property] protection." CP at 60. Concerned that the $880 maintenance fee would not be paid by Rebel, Burrill paid it. In June 2014, Rebel notified Burrill that payment was due the Patent and Trade Office to continue Rebel's patent application in the European Union; Burrill declined to pay those fees.

Thereafter, and into 2015, Burrill's lawyers periodically corresponded with Rebel's lawyer about obtaining assignment through the Patent and Trade Office of the Bud's Diver patent and patent application as a form of execution, using a process about whose particulars the parties disagree. When Rebel took the position that assignment of the patent would trigger litigation to determine the extent by which the patent's value exceeded the amount of Burrill's judgment, Burrill's lawyer responded that Burrill would proceed, instead, "via the court." CP at 82.

On April 15, 2016, Burrill moved the trial court to appoint a general receiver for Rebel and order Rebel to assign the patent and molds to the receiver. It supported its motion with declarations recounting what it learned in supplemental proceedings about the limits of Rebel's assets, its unsuccessful efforts to negotiate satisfaction of its judgment, and its concern about Rebel's failure to take steps required to preserve the patent and application.

5

In response, Rebel demonstrated that after receiving Burrill's motion it made payments to the Patent and Trade Office and successfully revived the patent application. It also took the position that by seeking appointment of a receiver, Burrill opened the door to litigation to determine "the differential between Judgment and Set-Offs." CP at 223. According to Rebel, it is entitled to a setoff against Burrill's judgment not only for royalties Burrill has withheld but also for "capital investments" Burrill was required to pay under the license agreement. *Id.*[1] It asked the court to establish a schedule for discovery and for a hearing to resolve its setoff claim.

At the hearing on Burrill's motion that took place on April 29, Rebel's lawyer told the court that "the financial abilities of Rebel Creek have changed dramatically" and that Rebel "is prepared now to tender an amount to satisfy the judgment." Report of Proceedings at 8. Burrill questioned whether the offer to satisfy the judgment was bona fide. As to Rebel's proposal to embark on a discovery process and litigation over setoffs, Burrill pointed out that under the parties' license agreement, Rebel was required to

---

[1] The parties' license agreement provides in pertinent part:

LICENSEE, in consideration of the grant of a license under U.S. Patent Application No. 11,290,391 and United States Patent Application No. 12,641,291, will pay royalties, make all necessary capital investments, and achieve PRACTICAL APPLICATION of the invention.

CP at 147. "Capital investments" is not defined by the agreement and the parties disagree about what it includes.

6

provide a notice of default, after which Burrill would have 30 days to cure, and that any remaining dispute would be subject to contractually required arbitration. The court granted Burrill's motion for a receivership at the conclusion of the April 29 hearing.

On May 12, Rebel moved in the trial court for a stay of the court's order. On the afternoon before the hearing on its request for a stay, Rebel paid $103,000 into court and filed a notice of supersedeas. The trial court denied the motion and Rebel immediately moved this court for discretionary review. Our commissioner found the appointment of the receiver to be appealable of right under RAP 2.2(a)(13) and granted Rebel's motion to stay the receivership order since Rebel had posted the $103,000 cash in lieu of a supersedeas bond.

Rebel appeals the trial court's order appointing a receiver and its order denying Rebel's motion for stay.

## ANALYSIS

Rebel makes four assignments of error. It assigns error to (1) the appointment of a receiver; (2) the trial court's reliance on this court's earlier unpublished opinion as a basis for receivership; (3) the trial court's failure, when ruling on the receivership, to consider Rebel's lawyer's tender of the amount of the judgment less setoffs; and (4) the failure to

7

No. 34401-1-III
*Seth Burrill Productions, Inc., v. Rebel Creek Tackle, Inc.*

stay appointment of a receiver. We address the issues in the order stated.[2]

### 1. *The trial court did not abuse its discretion in appointing a receiver*

A receiver is "a person appointed by the court as the court's agent, and subject to the court's direction, to take possession of, manage, or dispose of property of a person." RCW 7.60.005(10). Washington statutes identify 40 circumstances in which a receiver may be appointed; in almost all, the trial court must additionally determine that the appointment of a receiver "is reasonably necessary and that other available remedies are not available or are inadequate." RCW 7.60.025(1). A trial court's appointment of a

---

[2] A March 2, 2017 motion to supplement the record, filed by Rebel, was referred to the panel for decision. It sought to supplement the record on appeal pursuant to RAP 9.10 with documents included as Exhibits A-D of Rebel's reply brief.

Exhibit B to the reply brief is a single page document appearing at CP at 53, and is already a part of the record.

Exhibit A, consisting of an e-mail chain, does not shed light on Rebel's apparent disagreement with the sworn declaration of Mr. Smith that the debtor examination of Mr. Osborne "was rescheduled several times . . . but never taken (at RCTI's counsel's request) because of Mr. Allen's [sic] medical condition." CP at 8. The document is not needed to permit a decision on the merits of the issues presented for review.

Exhibits C and D postdate the orders challenged on appeal. Rebel's motion does not mention RAP 9.11 and comes nowhere near the showing required before this court will direct the taking of additional evidence.

The motion is denied.

receiver is reviewed for abuse of discretion.[3] *Roberts v. Wash. Nat'l Bank*, 9 Wash. 12, 13, 37 P. 26 (1894); *Union Boom Co. v. Samish Boom Co.*, 33 Wash. 144, 152, 74 P. 53 (1903) ("The court's discretion is not absolute or arbitrary, but a sound judicial discretion, in view of all the facts and circumstances of the particular case, exercised for the promotion of justice and the protection of rights, where no other adequate remedy exists.") (internal quotation marks omitted); *Mony Life Ins. Co. v. Cissne Family LLC*, 135 Wn. App. 948, 952, 148 P.3d 1065 (2006).

Burrill argued that this case presented four circumstances in which receiverships are authorized by RCW 7.60.025(1):

> (c) After judgment, in order to give effect to the judgment;
>
> . . . .
>
> (e) To the extent that property is not exempt from execution, at the instance of a judgment creditor either before or after the issuance of any execution, to preserve or protect it, or prevent its transfer;
>
> . . . .

---

[3] Rebel contends that our review is de novo because the trial court based its decision on written evidence alone, and made no credibility determinations. Br. of Appellant at 3 & n.74, citing *State v. Graciano*, 176 Wn.2d 531, 551-52, 295 P.3d 219 (2013) (Chambers, J., concurring in dissent). *Graciano* discussed contexts in which the trial court is ordinarily a factfinder; hence, when there is no dispute in the facts, some case law holds that appellate courts are in as good a position to make a decision as the trial court.

In this case, the nature of the trial court's discretion was not, primarily, to assess credibility, weigh evidence, and make a factual determination. It was, primarily, to assess Burrill's asserted need for the relief and determine whether, because other remedies were inadequate, the appointment of a receiver was reasonably necessary to secure ample justice to the parties. *Graciano* and the cases it cites do not apply.

(g) Upon an attachment of real or personal property when the property attached is of a perishable nature or is otherwise in danger of waste, impairment, or destruction, or where the abandoned property's owner has absconded with, secreted, or abandoned the property, and it is necessary to collect, conserve, manage, control, or protect it, or to dispose of it promptly, or when the court determines that the nature of the property or the exigency of the case otherwise provides cause for the appointment of a receiver; [or]

. . . .

(nn) In such other cases as may be provided for by law, or when, in the discretion of the court, it may be necessary to secure ample justice to the parties.

RCW 7.60.025(1)(c), (e), (g), (nn). Burrill's declarations in support of its motion demonstrated its unsuccessful efforts to collect its years-old judgment and that the patent and molds were Rebel's only significant assets.

Very similar facts were presented in a case in western Washington that was resolved through the federal courts, relying on Washington receivership law. The law firm of Hendricks & Lewis PLLC became embroiled in a dispute with its former client, musician George Clinton. The dispute was arbitrated and resulted in an award of over $1.6 million to the law firm that was confirmed in federal court and reduced to judgment in 2010. *Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 993 (9th Cir. 2014).

In 2012, the law firm sought appointment of a receiver and an order directing Clinton to assign to the receiver master recordings of Clinton's performances with the group "Funkadelic." *Id.* at 994. The district court found that "'[d]espite numerous efforts to enforce [the subject] judgments in this and other district[s], plaintiff has

recovered less than $340,000.'" *Id.* (alterations in original). It appointed a receiver, specifying in its order that the receiver had all rights, authority, and control over the master recordings under applicable Washington law "'in order to maximize the value of the sound recordings for the benefit of the parties and to make whole the judgment creditor, [H & L].'" *Id.* at 995 (alteration in original). Although the court's order expressed a preference that the receiver satisfy the law firm's judgment with income from the master recordings, it included in the receiver's authority "'the authority to sell or permanently dispose of any or all of the master sound recordings.'" *Id.* (emphasis omitted).

Mr. Clinton appealed to the Ninth Circuit Court of Appeals, which held that the district court did not abuse its discretion by appointing a receiver to manage or sell ownership of Clinton's copyrights. *Id.* at 999. It identified the same four sections of RCW 7.60.025(1) on which Burrill relies as relevant to the district court's authority to appoint a receiver. *Id.* at 999. We need not defer to a federal court's construction of Washington law, of course, but we find the federal court's reasons for affirming appointment of a receiver at the law firm's request to be the same as our reasons for affirming the trial court here: the federal district court recognized that the law firm had a valid judgment that it had not been able to recover; it was concerned that Mr. Clinton would not be able to satisfy the judgment in a reasonable period of time; and it was aware that the parties had discussed proposals for satisfying the judgment against Mr. Clinton,

11

but "after years of fighting over the debt . . . they had failed to come to such an agreement." *Id.* at 1000. As the Ninth Circuit observed, "[T]he district court balanced the equities and did not abuse its discretion in determining that appointing a receiver was 'necessary to secure ample justice to the parties.'" *Id.* (citing RCW 7.60.025 (1)(nn)).

Rebel nonetheless argues that where a judgment creditor requests appointment of a receiver, it is a "condition precedent" that the judgment creditor has taken action in court to execute on the judgment. It cites RCW 7.60.025(1)(f), which authorizes a receivership "when an execution has been returned unsatisfied." Burrill never relied on RCW 7.60.025(1)(f) as a basis for appointing a receiver for Rebel.

Rebel also argues that it revived the patent application whose notice of abandonment was received in 2013. But it did so only after the receivership motion was filed, and revival of the application did not change the fact that a sale of Rebel's intellectual property appears to be the only way to pay Burrill's longstanding and wholly unsatisfied judgment. A commercially reasonable sale by a qualified receiver best protects the interests of all parties.

The trial court did not abuse its discretion in appointing the receiver.

12

2.    *The trial court did not err in considering Rebel's prior contempt in deciding whether to appoint a receiver*

Rebel next argues the trial court improperly went outside the parties' submissions when it considered this court's decision affirming the order finding Rebel in contempt in deciding whether to appoint a receiver. Its argument is factually and legally unsupported.

Rebel's failure to comply with the arbitration order and judgment requiring it to deliver the molds was relied on by Burrill as a relevant part of the parties' history when it moved for appointment of the receiver. *See, e.g.*, CP at 12. Moreover, the trial court was entitled to take judicial notice of the prior contempt proceeding and appeal. *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 98, 117 P.3d 1117, (2005) (court may take judicial notice of the record in the case before it or in proceedings engrafted, ancillary, or supplementary to it).

The appointment of a receiver depends on "all [of] the facts and circumstance of the particular case." *Union Boom*, 33 Wash. at 152. Rebel's earlier disregard of the court's order to deliver the molds could be considered by the trial court when determining the appropriateness of a receivership.

3.    *The trial court did not err in rejecting Rebel's lawyer's tender of the "differential" between the judgment and setoffs*

In its written opposition to Burrill's motion for appointment of a receiver, Rebel offered to tender "the differential [between the judgment and the set-offs owed to Defendant by Plaintiff] if the balance is in favor of the Plaintiff." CP at 129. At the

hearing on April 29, 2016, its lawyer repeated its offer. Rebel assigns error to the trial court's alleged failure to consider the tender.

Presumably, the trial court did consider the tender; Rebel offers no evidence it did not. But the court was not required to go along with Rebel's proposal for litigation over setoffs that would further delay Burrill's collection of its longstanding judgment. And we find no legal basis for Rebel's proposed procedure for determining the "differential" or, as it later requested, for entertaining a declaratory judgment claim. We may affirm the trial court on any ground supported by the record whether or not the court considered that ground. *LaMon v. Butler*, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

Rebel likens this case to *Sherry v. Financial Indemnity Co.*, 160 Wn.2d 611, 160 P.3d 31 (2007), but that case presented a very different situation. In *Sherry*, an insured commenced an action to confirm an arbitration award against its insurer, and the insurer asked that the same court determine its right of offset for payments it had previously made to its insured. Before proceeding to *any* judgment, the parties agreed, without the insurer filing a counterclaim, that the matters would be resolved in the same proceeding. On appeal, the Washington Supreme Court observed that it "would have been better practice" for the insurer to formally plead a declaratory judgment counterclaim or bring a separate action, but it was willing to treat the case "as if" the parties had amended their initial pleadings to reflect the insurer's counterclaim. *Id.* at 617-18.

14

*Reichlin v. First National Bank*, 184 Wash. 304, 51 P.2d 380 (1935), another case relied on by Rebel, is also distinguishable. In that case, the setoff that was allowed was a final judgment that had been pleaded as a setoff in answering the complaint. *Id.* at 306. As the court observed, the setoff was "a solemn judgment establishing finally an indebtedness certain in amount. . . . [T]here is nothing left to litigate, and it is beyond the power of a jury or of the court itself . . . to deny or defeat the right of a judgment creditor to receive the sum due him from the judgment debtor." *Id.* at 313.

There is no regular procedure that we can pretend permits what Rebel was asking the trial court to do here. Claims asserted in the complaint and answer were resolved by a final judgment in 2013. It is too late to amend Rebel's answer or treat it as if it was amended. Burrill's request for appointment of the receiver is not a new action; it is in the nature of a postjudgment remedy. *See* CR 66, "Receivership Proceedings," which has been reserved, with citation to chapter 7.60 RCW.

Rebel does not explain how asserting a new claim for relief in the case below, three years after final judgment, was legally possible. And of course unlike in *Sherry*, Burrill never agreed to resolve setoffs in the case below. It insisted that Rebel give notice of default, as required by the parties' license agreement, and arbitrate, if the matter could not be resolved by agreement.

Contrary to Rebel's argument, Burrill has not waived arbitration by seeking appointment of a receiver. The arbitration provisions of the parties' license agreement

15

apply only to "a BREACH of any provision of this AGREEMENT" that is not cured. *See* CP at 151 (License Agreement, ¶¶ 8.2-8.5). Rebel's claim for nonpayment of royalties and alleged capital investments is subject to the license agreement's arbitration provisions, but Burrill's request for a receivership in aid of collecting a judgment was not. Since the request for a receiver was not covered by any contractual agreement to arbitrate, Burrill did not act inconsistently with a right to arbitrate by moving in the trial court for appointment of a receiver.

4.     *The trial court did not err by refusing to stay appointment of the receiver*

Finally, Rebel argues that the trial court erred in refusing to stay its order appointing a receiver. A trial court's decision to deny a motion for stay of proceedings is reviewed for abuse of discretion. *State v. Music*, 79 Wn.2d 699, 716, 489 P.2d 159 (1971), *vacated in part on other grounds*, 408 U.S. 933, 940 (1972) (table decision).

Rebel's motion asked the court to stay its order until the parties (1) disclosed amounts they claimed as setoffs, (2) engaged in discovery, and (3) proceeded to hearings on any dispute over setoffs. *See* CP at 395-96. The court did not abuse its discretion in refusing to order a procedure that would have further delayed Burrill's collection of its judgment and that we have already observed was not a lawful procedure.

16

*Requests for sanctions and attorney fees*

Rebel seeks an award of sanctions against Burrill under CR 11. Both sides request an award of fees and costs on appeal.

As to Rebel's requests, assuming without deciding that CR 11 is a basis for an award of sanctions on appeal, we find no sanctionable conduct and deny the request. Rebel fails to identify applicable law that would entitle it to an award of fees and costs. *See* RAP 18.1(a) (party may recover attorney fees if authorized by applicable law).

Burrill also requests an award of fees and costs, citing RAP 18.1(a) and 18.9(a). RAP 18.9(a) authorizes this court to "order a party . . . who . . . files a frivolous appeal . . . to pay terms or compensatory damages to any other party who has been harmed . . . to pay sanctions to the court." We agree with Burrill that Rebel challenged the court's receivership order without addressing any provision of RCW 7.60.025(1) on which Burrill relied, did not attempt to identify an abuse of discretion by the trial court, and made arguments unsupported by law. We award Burrill reasonable attorney fees and costs on appeal subject to its timely compliance with RAP 18.1(d).[4]

*Clarification of stay*

Burrill asks that we clarify the duration of our commissioner's order staying the trial court's order and that we order release of the cash on deposit with the court.

---

[4] "Reasonable" fees should exclude work performed on the threshold issue of appealability.

17

No. 34401-1-III
*Seth Burrill Productions, Inc., v. Rebel Creek Tackle, Inc.*

Our commissioner ruled:

> Under RAP 8.1(b)(1), "a party may stay enforcement of a money judgment by filing in the trial court a supersedeas bond or cash." Under RAP 8.1(c)(1), "[t]he supersedeas amount shall be the amount of the judgment, plus interest likely to accrue during the pendency of the appeal and attorney fees, costs, and expenses likely to be awarded on appeal."
>
> The record reflects that on May 26, 2016, Rebel Creek's attorney deposited $103,000.00 with the Spokane County Superior Court Clerk, which is an amount adequate to cover the amounts of both the judgment and the contempt judgment earlier entered against Rebel Creek and which the appointment of the receiver and the sale of the patent and molds (the subject of the current appeal) is intended to satisfy.

Comm'r's Am. Ruling (June 7, 2016) at 2-3. The commissioner's order further states

that Rebel Creek "has filed a sufficient cash amount with the superior court clerk to stay

execution on the amount of the judgments pending appeal." *Id.* at 3.

Rebel's cash deposit posted in lieu of supersedeas bond is available to satisfy

Burrill's judgments against Rebel. *Brooke v. Robinson*, 125 Wn. App. 253, 258, 104

P.3d 674 (2004). This is so notwithstanding Rebel's reference to making the deposit

"with awareness that Plaintiff acknowledges that set-offs are owed by Plaintiff to

Defendant." CP at 349. Rebel's notice of supersedeas states that its deposit "is made

pursuant to RAP 8.1(c)." Rebel was aware that the trial court had refused to order

discovery and hearing on the amount of a "differential," and our commissioner accepted

Rebel's argument that the cash deposit was supersedeas for the money judgments. Had

Rebel not posted the cash deposit, the court's order would not have been stayed by our

commissioner.

18

No. 34401-1-III
*Seth Burrill Productions, Inc., v. Rebel Creek Tackle, Inc.*

RAP 8.6 makes it clear that the issuance of the mandate as provided in RAP 12.5 terminates any delay of enforcement of a trial court decision obtained pursuant to RAP 8.1 and terminates orders entered pursuant to RAP 8.3.

We affirm the order appointing the receiver, affirm the trial court's refusal to entertain Rebel's postjudgment claim to setoffs, award Burrill reasonable attorney fees and costs on appeal subject to timely compliance with RAP 18.1, and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.