# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEPHAN EARL WHITTED,<br><br>Appellant/Cross-Respondent,<br><br>v.<br><br>LORI JONES JORDAN,<br><br>Respondent/Cross-Appellant. | No. 77967-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 22, 2019 |

MANN, J. — This is the second appeal involving the enforcement of a decree dissolving the parties' marriage entered by a Georgia court more than a decade ago. In the first proceeding, the Washington court entered a judgment against Stephen Whitted for approximately $165,000 in unpaid child support. In the second proceeding that is the subject of this appeal, the court entered judgment against Lori Jordan for a principal sum of $55,000—enforcing a provision of the decree that required her to transfer retirement account funds to Whitted. The court allowed Jordan to offset the amount she owed to Whitted against the larger amount Whitted owed to her. Both parties appeal, challenging the offset, the calculation and rate of interest on the principal judgment amount, and the allocation of responsibility for any penalties or taxes stemming from the withdrawal of retirement funds. We affirm.

I.

The background facts surrounding the parties' dissolution and the first lawsuit to enforce the decree are derived from our unpublished decision affirming the judgment against Whitted for unpaid child support. See Jordan v. Whitted, noted at 2 Wn. App. 2d 1034 (2018).

Jordan and Whitted dissolved their marriage in 2007 in Georgia. The divorce decree required Whitted to pay monthly child support for the parties' three children and required Jordan to transfer $55,000 from her retirement account to Whitted. Whitted stopped paying child support in 2010. Jordan never transferred the retirement funds.

At some point, Whitted moved to Maryland and Jordan moved to Washington. In 2016, Jordan registered the Georgia decree in Washington and filed an action to enforce the child support provisions. The court entered a judgment against Whitted for unpaid child support of $167,868.85, plus interest. The court declined to offset the arrearage by Jordan's unpaid retirement fund obligation, concluding that the issue of the retirement fund transfer was not properly before it. Whitted appealed, and this court affirmed.

Meanwhile, Whitted initiated the instant proceeding by filing a "Declaration re: Foreign Judgment" and supporting documents. He claimed entitlement to a judgment of $55,000 under the decree, plus "appx. $85,000" in interest based on an interest rate of "10.9 % per annum." Whitted then applied for a writ of garnishment seeking to garnish

Jordan's earnings. Jordan moved to stay the writ of garnishment. Following a hearing, the court granted the motion.[1]

The parties did not challenge the principal judgment amount, but disputed the calculation and rate of interest, whether the principal judgment amount should be reduced to account for penalties and taxes, and whether the judgment should be offset by the existing judgment for unpaid child support. After a second hearing, the court ruled that Whitted was entitled to judgment of $55,000, the applicable rate of interest under Georgia law was 10.9 percent, and interest applied only to the principal. The court also ruled that Jordan was entitled to offset the amount she owed, $114,950, by the outstanding amount owed by Whitted, which the court calculated as $197,598.40 as of the date of the hearing. The court declined to reduce the judgment amount based on estimated penalties and/or taxes. The court then denied Jordan's motion for reconsideration. Both parties appeal.

II.

When the court made its ruling granting an offset, the judgment against Whitted for unpaid child support was pending on appeal. Whitted therefore argues that the judgment against him was not final and the trial court erred "as a matter of law" in allowing the offset.

An offset or setoff "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 18, 116 S. Ct. 286, 133 L. Ed 2d 258 (1995) (quoting Studley v. Boylston Nat. Bank, 229 U.S. 523,

---

[1] The court also granted a continuance, based on Whitted's request for time to obtain counsel and to investigate whether the matter should be resolved together with the child support issue because judgment had not yet been entered in that proceeding.

528, 33 S. Ct. 806, 57 L. Ed. 1313 (1913)). We review a trial court's decision to offset a judgment for abuse of discretion. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 701, 9 P.3d 898 (2000). "'[W]hether mutual judgments may be satisfied by being set off against each other rests largely within the court's discretion . . . the application to set off judgments should be made in equity and controlled by equitable principles.'" Rapid Settlements, Ltd.'s App. for Approval of Transfer of Structured Settlement Payment Rights, 166 Wn. App. 683, 694, 271 P.3d 925 (2012) (quoting Reichlin v. First Nat'l Bank, 184 Wash. 304, 314-15, 51 P.2d 380 (1934) (citations omitted)).

Explaining its decision to allow the offset, the trial court noted that while Whitted appealed the judgment, he had taken no measures to stay enforcement of the judgment pending appeal. A judgment in a civil case is enforceable unless enforcement is delayed in the manner provided by in the Rules of Appellate Procedure. RAP 8.1. "A trial court decision may be enforced pending appeal or review unless stayed pursuant to the provisions of this rule. Any party to a review proceeding has the right to stay enforcement of a money judgment, or a decision affecting real, personal or intellectual property, pending review." RAP 8.1(b). A party may stay enforcement of a monetary judgment by filing a supersedeas bond in the trial court. RAP 8.1(b)(1).[2]

No persuasive authority supports Whitted's position that a pending appeal precludes an offset. He primarily relies on Reichlin in which the court held that equitable principals supported the trial court's decision to offset a judgment entered

---

[2] As Jordan points out, in addition to being enforceable, a pending appeal does not affect finality for purposes of res judicata or collateral estoppel even though "res judicata can still be defeated by later rulings on appeal." Lejeune v. Clallam County, 64 Wn. App. 257, 265-66, 823 P.2d 1144 (1992); Winchell's Donuts v. Quintana, 65 Wn. App. 525, 530, 828 P.2d 1166 (1992).

against the defendant by the amount of a separate judgment entered against the plaintiff. The court concluded:

> [A] judgment, especially a judgment entered by the same court, when pleaded as a set-off, must, as a matter of law, be credited upon any recovery which the judgment debtor, as plaintiff, may establish against the judgment creditor as defendant. No other course would be equitable.

Reichlin, 184 Wash. at 313.

In the context of a general discussion about equitable set offs, the Reichlin court quoted an excerpt from a treatise suggesting that the pendency of an appeal may, in some cases, prevent a judgment from being "final and conclusive" for purposes of an offset, for instance, when "execution of the judgment has been stayed." Reichlin, 184 Wash. at 314. But, here again, Whitted took no action to stay enforcement of the judgment. And since Reichlin did not concern judgments that had been appealed, the quoted language was dicta and unnecessary to the court's holding.[3]

The trial court acted within its discretion in granting the offset.

### III.

### A.

Jordan contends the court erred when it imposed postjudgment interest at the rate of 10.9 percent. We review an award of postjudgment interest de novo. TJ Landco, LLC v. Harley C. Douglass, Inc., 186 Wn. App. 249, 256, 346 P.3d 777 (2015). The rate of interest payable on a foreign judgment registered in Washington is

---

[3] While unpublished decisions of this court filed or after March 1, 2013 may be cited as nonbinding authority, GR 14.1(a) requires the citing party to advise the court that the decision is unpublished. Whitted fails to comply with this provision in citing the unpublished decision of Division Three of this court in Seth Burrill Productions, Inc. v. Rebel Creek Tackle, noted at 198 Wn. App. 1038 (2017). Even overlooking this omission, the decision is unhelpful. The trial court denied a party's claim for certain set offs in that case where the proposed set offs had not been reduced to judgment. Whitted also cites an Oregon statute, without explanation as to why that law is "controlling" precedent in Washington.

determined by the law of the state that rendered the judgment. RCW 6.36.140. Under Georgia law, the default interest rate applicable to judgments is the prime rate of interest on the date of the judgment, plus 3 percent. GA. CODE ANN. § 7-4-12(a). The parties do not dispute that, at the time of the decree, 10.9 percent was the rate of interest under this provision.

Jordan contends that a more specific statute, former GA. CODE ANN. § 7-4-12.1, applied to the award under the divorce decree. In 2007, when the Georgia court entered the decree, that statute provided, in relevant part:

> (a) All awards of child support expressed in monetary amounts shall accrue interest at the rate of 7 percent per annum commencing 30 days from the day such award or payment is due. This Code section shall apply to all awards, court orders, decrees, and judgments rendered pursuant to Title 19.

Former GA. CODE ANN. § 7-4-12.1(a) (2006).

By its express terms, the statute applied a 7 percent rate of interest to "awards of child support." Jordan argues that the discounted interest rate was not limited to child support and applied to "all awards, court orders, decrees, and judgments rendered pursuant to Title 19." Title 19 of the Georgia code includes chapters related to "divorce," child support, and several other related family law topics. Thus, she contends that the 7 percent rate applied to any award or judgment in a domestic relations matter.

But Jordan's interpretation of the provision results in superfluous statutory language. If the discounted rate of interest applied to all judgments or awards under Title 19, it would have been unnecessary to specify that it applied to child support awards. Both Georgia and Washington courts interpret statutes to give effect to all language, so as to render no portion meaningless or superfluous. Motors Acceptance

Corp. v. Rozier, 278 Ga. 52, 53, 597 S. E. 2d 367 (2004); Rivard v. State, 168 Wn.2d 775, 783, 231 P.3d 186 (2010). The alternative interpretation that gives meaning to all provisions of the statute is that under the version of the statute in effect at the time of the decree, the discounted rate of interest applied to child support regardless of whether that support was encompassed within a decree, court order, award, or other another vehicle under Title 19.[4] The trial court did not err in ruling that the default rate of postjudgment interest under Georgia law, here 10.9 percent, applied.

Whitted agrees with the rate of interest but claims the court erred by imposing simple interest on only the principal judgment amount.[5] He relies on a provision of the Uniform Enforcement of Foreign Judgments Act, RCW 6.36.035(3)(a), to argue that the decree provided for the accrual of compound interest and Jordan waived her right to object. We disagree.

Georgia law does not provide for the imposition of interest upon interest, or in other words, compound interest.[6] See GA. CODE ANN. § 9-12-10 ("No part of the judgment shall bear interest except the principal which is due on the original debt."); see also Groover v. Commercial Bancorp of Ga., 220 Ga. App. 13, 16, 467 S. E. 2d 355

---

[4] The Georgia legislature amended the statute in 2017. The current provision does not include language limiting the interest rate to "awards of child support" and applies the discounted rate of interest to all "awards, court orders, decrees or judgments rendered pursuant to Title 19 expressed in monetary amounts." GA. CODE ANN. § 7-4-12.1(a). In this case, the subsequent amendment sheds no light on the meaning of the prior statute. There is no evidence that the language of the prior version generated a dispute that the legislature responded to in amending the statute. Jordan asserts that both versions are consistent, but it is equally reasonable to conclude that the legislature expanded the application of the 7 percent interest rate.

[5] We will not entertain Whitted's suggestion in reply that Washington's higher rate of interest is applicable to a portion of the interest. See, e.g., Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (declining to address an argument raised for the first time in a reply brief).

[6] Likewise, in Washington, interest means simple interest unless the express language of a statute or an agreement provides otherwise. See Caruso v. Local Union No. 690, Int'l Bhd. of Teamsters, 50 Wn. App. 688, 689, 749 P.2d 1304 (1988).

7

(1996) (Georgia's interest statute "forbids post-judgment interest except on the principal or original debt."). There is nothing in the decree to indicate an intent to impose compound interest. And even if Whitted's registration of the Georgia decree apprised Jordan of his claim for compound interest, RCW 6.36.035(3)(a) imposes no requirement that a judgment debtor must object within a ten-day period to a claimed rate of interest on a registered foreign judgment. The statute provides a ten-day waiting period before a party may commence "execution or other process for enforcement" of a registered foreign judgment. RCW 6.36.035(3)(a). This limits only a party's ability to enforce the foreign judgment. The trial court did not err in imposing interest only on the principal judgment amount.

B.

Jordan argues that the trial court impermissibly modified the Georgia decree by requiring her to bear the burden of tax consequences and/or penalties resulting from the liquidation of retirement funds.

The 2007 Georgia decree required Whitted to provide an account so that Jordan could transfer the retirement funds. The decree provided that should Jordan "incur any penalty or tax obligation, or other charges due to the withdrawal [or] transfer of said funds, all taxes, penalties, or other charges will be deducted from the portion of the accounts that is transferred to or given to [Whitted]."

In 2011, the Georgia court entered another order on Whitted's motion to enforce the decree. According to that order, Whitted provided an account number to Jordan in December 2007. Meanwhile, Jordan declared bankruptcy in an unsuccessful attempt to extinguish the debt. The parties then disagreed about whether Jordan owed $55,000,

8

or merely half of the balance of the retirement account as it existed at the time of the transfer. Jordan alleged that the value of the account decreased significantly after 2007 and informed the court that she removed $38,000 from the account, half of the account value at the time of the withdrawal. The court ruled that Jordan owed Whitted $55,000, "minus taxes and penalties" and plus interest required by statute. The court ordered Whitted to provide a bank account, or if necessary, to prepare a qualified domestic relations order (QDRO) within 20 days, so that Jordan could transfer any and all funds remaining in the retirement account. If Jordan transferred less than the amount owed, the court ordered Jordan to pay Whitted $1,000 per month until the entire debt was satisfied.

Here, the court declined to reduce the principal judgment amount based on estimated taxes and penalties. The court pointed out that Whitted sought a monetary judgment based on the provisions of the decree and did not seek a transfer of assets or to compel the execution of a QDRO. The court further observed that the parties did not avail themselves of tax advantages by transferring the funds as ordered by the court in 2007 and 2011.

Jordan contends that the court inequitably and impermissibly modified the decree by awarding a monetary judgment because the decree awarded Whitted retirement assets, not cash, and allocated to him the financial burden of transferring those assets.

The court has broad equitable authority to enforce provisions set forth in a dissolution decree. Robinson v. Robinson, 37 Wn.2d 511, 516, 225 P.2d 411 (1950); In re Marriage of Greenlee, 65 Wn. App. 703, 710, 829 P.2d 1120 (1992). Incident to this broad authority, the superior court can enforce a decree so long as it does not modify

9

the decree.[7] In re Marriage of Thompson, 97 Wn. App. 873, 878-79, 988 P.2d 499 (1999). A decree is modified when the rights given to one party are either extended beyond or reduced from the scope originally intended by the decree. Rivard v. Rivard, 75 Wn.2d 415, 418, 451 P.2d 677 (1969); Thompson, 97 Wn. App. at 878. We review the trial court's choice of remedy for an abuse of discretion. In re Marriage of Farmer, 172 Wn.2d 616, 624, 259 P.3d 256 (2011).

The superior court's order enforcing the Georgia decree neither extended nor reduced the scope of rights of either party. By ordering a monetary judgment, the court merely provided a means for Whitted to obtain the assets awarded in the 2007 decree. The court's order provides for an offset such that that Jordan is "entitled to full satisfaction of judgment on the debt she owes" to Whitted. Because the judgment was fully satisfied by subtracting the judgment amount from the child support debt, there was no need to adjust the principal judgment amount or allocate responsibility for taxes and penalties associated with the liquidation of retirement funds.[8] Considering the parties' failure to cooperate in accomplishing such a transfer in more than ten years following the entry of the decree, the superior court's decision to impose a monetary judgment for a principal sum of $55,000 to enforce the terms of the decree was not an abuse of discretion.

---

[7] Georgia law also follows these principles. See GA. CODE ANN. § 23-4-31 (superior court has "full power to enforce its decrees when rendered"); Smith v. Smith, 293 Ga. 563, 564, 748 S. E. 2d 456 (2013).

[8] Jordan asserts in her reply brief that although the court's order does not technically require withdrawal of retirement funds, she will, in fact, be forced to rely on such funds for the "intended purpose of child support" and to pay for postsecondary education. However, these assertions are neither fully borne out by the factual record nor relevant to the question of whether the court improperly modified the decree.

IV.

Whitted's application for a writ of garnishment included a claim for $5,000 in attorney fees. On appeal, Whitted claims he is entitled to those fees because Jordan failed to specifically object below within a ten-day period. We deny the request. While an attorney appeared on Whitted's behalf at the hearing on his motion to enforce the decree, he represented himself for the most part throughout this proceeding. A pro se litigant is generally not entitled to attorney fees to recover for work representing himself. In re Marriage of Brown, 159 Wn. App. 931, 938-39, 247 P.3d 466 (2011). The trial court did not award fees below and as explained, neither RCW 6.36.035(3)(a) nor any other authority supports Whitted's argument as to waiver.

Affirmed.

_Mann, J_____

WE CONCUR:

_Chun, J._____          _Appelwick, C.J_____