[No. 29743-8-III.   Division Three.   February 23, 2012.]

*In the Matter of the Application by* RAPID SETTLEMENTS, LTD., *for Approval of Transfer of Structured Settlement Payment Rights.*

RSL-3B-IL, LTD., *Appellant*, v. SYMETRA LIFE INSURANCE COMPANY ET AL., *Respondents.*

684

*Matthew W. Daley* (of *Witherspoon, Kelley, Davenport & Toole*) (*E. John Gorman* of *The Feldman Law Firm LLP*, of counsel), for appellant.

*Medora Marisseau* and *Johanna M. Coolbaugh* (of *Karr Tuttle Campbell*), for respondents.

¶1 BROWN, J. — RSL-3B-IL Ltd. (3B) appeals a trial court's CR 60(b) decision to allow Symetra Life Insurance Company and Symetra Assigned Benefit Services Company (collectively Symetra) a setoff against 3B in a transfer of settlement payment rights arrangement. It mainly contends the trial court erred in deciding 3B was the alter ego of Rapid Settlements Ltd. (RSL) (now known as Liquidating Marketing Ltd.), the named "transferee" under the Washington Structured Settlement Protection Act (SSPA), chapter 19.205 RCW, and Symetra's judgment debtor. We reject 3B's due process, alter ego, Texas law, merger, and full faith and credit arguments. Accordingly, we affirm and deny 3B's equitable attorney fee request.

## BACKGROUND AND PROCEDURAL FACTS

¶2 Symetra Life and Symetra Assigned are Washington corporations. Symetra Assigned is a structured settlement obligor, assuming the obligation to make periodic payments

under a structured settlement agreement. Symetra Life is an annuity issuer, issuing annuity contracts to fund the obligation of the structured settlement obligor to a payee under the structured settlement agreement. Under SSPA, the payee is usually a tort victim entitled to receive tax-free payments under a structured settlement. RCW 19.205-.010(8). Historically, structured settlement agreements prohibited payees from accelerating, selling, or assigning payments, in order to preserve favorable tax treatment. In 2001, Washington enacted the SSPA to allow payees to transfer some or all periodic payments in exchange for a lump sum. The SSPA requires the transferee to comply with specified notifications, disclosures, and processes designed to protect the payee and interested parties and allow the court to determine whether a transfer is in the payee's best interests. Liability for compliance is on the transferee. RCW 19.205.060(6).

¶3 RSL is a Texas limited partnership that purchases payments from payees. RSL has filed transfer applications in Washington, seeking approval of transfers it entered with payees, including William Thompson and Nicholas Reihs, both Washington residents. In July 2004, RSL and Mr. Thompson contracted for Mr. Thompson to transfer one of his future payments for a lump sum payment from RSL. *Rapid Settlements, Ltd. v. Symetra Life Ins. Co.*, 134 Wn. App. 329, 331, 139 P.3d 411 (2006). On October 26, 2004, RSL filed the Thompson application in King County Superior Court. *Id.* Symetra opposed the Thompson application because the proposed transfer failed to meet SSPA requirements. *Id.*

¶4 During argument on the Thompson application, counsel for RSL stated, "The only liability, it is the transferee, Rapid, that bears all of the responsibility." Clerk's Papers (CP) at 640. Following this hearing, the King County Superior Court agreed RSL had not complied with the SSPA and dismissed the Thompson application without prejudice. *Rapid Settlements*, 134 Wn. App. at 332. Symetra

then successfully petitioned under RCW 19.205.040 for attorney fees and costs, receiving $7,927.50. *Id.* RSL unsuccessfully appealed, and Division One of this court awarded Symetra fees on appeal. *Id.* at 335-36. The Washington Supreme Court denied RSL's petition for review and awarded Symetra additional fees. *Rapid Settlements, Ltd. v. Symetra Assigned Benefits Serv. Co.*, 160 Wn.2d 1015, 161 P.3d 1027 (2007). On October 31, 2008, the King County Superior Court entered a still unsatisfied judgment of $39,287.04 for Symetra.

¶5 RSL successfully refiled the Thompson application for approval of transfer of structured settlement payments in Cowlitz County. RSL changed the designated beneficiary to 3B and assignment payment to 3B. Meanwhile, Symetra continued to seek payment from RSL and domesticated the judgment to RSL's principal place of business, Texas, and issued interrogatories to RSL to identify RSL property. On March 17, 2009, RSL, through its representative, Stewart Feldman, issued objections and responses to Symetra's postjudgment interrogatories. RSL claimed it owned no property in Texas. Symetra was then unsuccessful in garnishing RSL's bank account because RSL's assets were held under the name of another RSL entity.

¶6 On November 19, 2004, RSL filed the Reihs application with the Benton County Superior Court, seeking to purchase a structured settlement payment from Mr. Reihs. The underlying court-approved structured settlement included a $60,000 guaranteed payment due to Mr. Reihs on September 2, 2012. The Reihs application sought approval of a transfer agreement under which Mr. Reihs would sell his $60,000 future lump sum payment to RSL in exchange for a $20,000 payment to Mr. Reihs upon court approval. RSL filed and served notice upon Symetra. On January 12, 2005, Symetra objected, arguing the Reihs application violated the SSPA.

¶7 On March 18, 2005, RSL filed an amended application including an amended transfer agreement signed on

March 1, 2005, by Mr. Reihs and Mr. Feldman on behalf of RSL. It partly states Mr. Reihs "hereby sells, assigns, and transfers to Rapid Settlements all of Assignor's right, title, and interest (including all benefits and rights relating thereto) . . . . Rapid Settlements hereby purchases and accepts such assignment and transfer of the Assigned Payment(s)." CP at 25. Symetra unsuccessfully objected to RSL's amended application. On May 12, 2005, the court approved the transfer.

¶8 On June 2, 2010, Symetra requested a CR 60(b) modification of the May 2005 order with the Benton County Superior Court, serving its motion on RSL. Symetra renoted the motion twice, first at the request of counsel for RSL, and then at the request of 3B's counsel. On July 2, 2010, 3B moved to intervene. The record shows no request for evidentiary hearing, to present witnesses, for a continuance, or for a jury trial. 3B did not object to Symetra's evidence in support of its motion.

¶9 3B argued RSL "ceased doing business several years ago." CP at 410. Yet, in July 2010, the Texas Secretary of State listed RSL as "[i]n existence." CP at 421, 425. As recently as January 2010, RSL was aggressively litigating an action in Texas in order "to thwart the execution of a valid judgment against [RSL]." CP at 234. In addition, RSL engaged in litigation throughout 2010. *See, e.g., Rapid Settlements, Ltd. v. Shcolnik*, No. H-I0-1366, 2010 U.S. Dist. LEXIS 118792 (S.D. Tex. Nov. 8, 2010); *In re RSL Funding, LLC*, No. 14-10-01111-CV, 2010 Tex. App. LEXIS 9157 (Nov. 18, 2010); *Hartford Life Ins. Co. v. Rapid Settlements, Ltd.*, No. 14-09-00169-CV, 2010 Tex. App. LEXIS 7774 (Sept. 23, 2010).

¶10 Symetra's declaration testimony establishes a writ of execution served January 19, 2010, on RSL at the same business address shared by RSL and 3B. The name on the door was solely "Rapid Settlements, Ltd." CP at 242. The employees present stated they were solely "Rapid" employees. CP at 241-43. Numerous documents such as checks and

operations manuals were found there bearing solely RSL's name.

¶11 3B argued no setoff should be made because no mutuality of obligation existed between 3B and RSL, and it was denied due process without discovery time. The trial court granted the setoff, reasoning RSL, not 3B, was the transferee, thus Symetra's obligation ran solely to RSL. The court found substantial evidence supported finding RSL and 3B were "one [and] the same," supporting mutuality of obligation. Report of Proceedings at 20. 3B unsuccessfully requested reconsideration and then appealed.

## ANALYSIS

### A. Due Process

¶12 The issue is whether 3B was afforded due process in the proceedings below. 3B contends Symetra never served 3B with process, denying 3B's opportunity to be heard.

¶13 We review this CR 60 motion ruling for an abuse of discretion. *Vance v. Offices of Thurston County Comm'rs*, 117 Wn. App. 660, 671, 71 P.3d 680 (2003). " 'Discretion is abused when it is exercised on untenable grounds or for untenable reasons.' " *Luckett v. Boeing Co.*, 98 Wn. App. 307, 309-10, 989 P.2d 1144 (1999) (quoting *Lane v. Brown & Haley*, 81 Wn. App. 102, 105, 912 P.2d 1040 (1996)). The applicability of the constitutional due process guaranty is a question of law we review de novo. *Post v. City of Tacoma*, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

¶14 3B was not a party to the underlying action and had no interest in the proceedings because it was not the transferee. Symetra's obligation ran to RSL. Thus, 3B was not entitled to service of the notice of the motion to revise the 2005 order. Even so, on June 4, 2010 a copy of the motion was faxed and mailed to Mr. Feldman, 3B's registered agent and chief executive officer. In Washington, as reasoned below, this forestalls 3B's fair play and substantial justice arguments associated with lack of notice or service.

¶15 In *Lenzi v. Redland Insurance Co.*, 140 Wn.2d 267, 276, 996 P.2d 603 (2000), the insureds sought a declaration that their underinsured motorist insurer was bound to pay a default judgment that had been entered against an uninsured tortfeasor. The insurer argued it had merely received a mailed copy of the summons and complaint for the suit against the tortfeasor and was not actually "served" with the pleadings so it had not received " 'perfected' " notice. *Id.* at 275. The court reasoned receipt of the summons and complaint "alerts a potential party there is a lawsuit afoot." *Id.* at 276. The insurer knew about the litigation, had an interest in the outcome, and was obligated to protect its position and could have done so by intervening. *Id.* Receipt of the pleadings alone was sufficient to comport with "notions of fair play and substantial justice." *Id.*

¶16 Here, 3B received actual notice of the motion and intervened. It was afforded an opportunity to present its objections and was heard. Further, 3B requested and was granted an extension of the motion hearing. Because 3B had notice, time to prepare a response, and an opportunity to be heard, due process was satisfied. 3B argues for the first time on appeal that it had a right to a jury trial on the question of alter ego. But 3B never made this argument before the trial court and we consider it waived on appeal. *Ford Motor Co. v. Barrett*, 115 Wn.2d 556, 563, 800 P.2d 367 (1990). Moreover, a party is not entitled to a jury trial if the relief sought is equitable in nature. *Brown v. Safeway Stores, Inc.*, 94 Wn.2d 359, 365, 617 P.2d 704 (1980). Proceedings under CR 60 are "equitable in nature." *Housing Auth. v. Newbigging*, 105 Wn. App. 178, 192, 19 P.3d 1081 (2001) (citing *Pamelin Indus., Inc. v. Sheen-U.S.A., Inc.*, 95 Wn.2d 398, 404, 622 P.2d 1270 (1981)).

## B. Alter Ego

¶17 The issue is whether the trial court erred in finding 3B was the alter ego of RSL. 3B contends Symetra did not

meet its burden of proof to establish that the two entities are one and the same.

¶18 Washington recognizes the "alter ego" doctrine providing that where one entity " 'so dominates and controls a corporation that such corporation is [the entity's] alter ego, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same.' " *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (emphasis omitted) (internal quotation marks omitted) (quoting *Pohlman Inv. Co. v. Va. City Gold Mining Co.*, 184 Wash. 273, 283, 51 P.2d 363 (1935)). As noted in *Northern Laminate Sales, Inc. v. Matthews*, 249 F. Supp. 2d 130, 139 (D.N.H. 2003), "[a]lthough a corporation is treated as a separate legal entity and its liabilities are not attributable to its owners and officers, the corporate separateness that shields an owner from liability may be disregarded under certain conditions." *Scully Signal Co. v. Joyal*, 881 F. Supp. 727, 736 (D.R.I. 1995). "The result . . . is that if the corporation is found liable or subject to the jurisdiction of the court, the owner is likewise subject to liability and personal jurisdiction." *N. Laminate Sales*, 249 F. Supp. 2d at 139. Thus, a court will pierce the veil and find a corporate entity is one and the same with another corporate entity when the corporate form has been intentionally used to violate or evade a duty. "Typically, the injustice which dictates a piercing of the corporate veil is one involving fraud, misrepresentation, or some form of manipulation" to the entity's benefit and the creditor's detriment. *Truckweld Equip. Co. v. Olson*, 26 Wn. App. 638, 644-45, 618 P.2d 1017 (1980).

¶19 In *J.I. Case Credit Corp. v. Stark*, 64 Wn.2d 470, 392 P.2d 215 (1964), the court found two companies, Case and Credit, were one and the same, in order to prevent injustice to Mr. Stark. There, Mr. Stark leased a combine from the LaCrosse Hardware Company. *Id.* at 471. Later, he exercised an option to purchase the combine from LaCrosse. *Id.* at 471-72. He signed a note and chattel mortgage on Case

Company forms, and Case Credit Corporation purchased the note and mortgage. *Id.* at 472. Mr. Stark experienced repeated problems with the combine, returned it to the retailer as irreparable, and refused to pay on the note. *Id.* Credit sued him, claiming he could not assert a defense that the combine was defective because Credit was a separate corporation from Case. *Id.* at 475. The court disagreed and found the entities were one and the same because Credit was a wholly owned Case subsidiary, Case's secretary/ treasurer was Credit's president, all Credit employees were paid by Case, the credit manager of Credit was also an employee of Case, both companies had the same address, the same lawyer, the same agent, and the same auditors, and Credit's sole business was to handle retail financing for Case. *Id.* The court reasoned piercing the veil would prevent a wrong against Mr. Stark. *Id.* at 478.

¶20 The piercing elements are established here. RSL and 3B share an identity of beneficial ownership and control. RSL is a registered Texas domestic limited partnership, with a principal place of business at 5051 Westheimer, Suite 1875, Houston, Texas. RSL's general partner is Rapid Management Corporation. RSL's registered agent is Mr. Feldman. 3B is a registered Texas domestic limited partnership, with the same principal place of business as RSL. Rapid Management Corporation represented itself to the courts in Washington SSPA transfer applications as "the General Partner of Rapid Settlements, Ltd. and [3B]." CP at 348. Thus, the ownership of both entities has been held out to third parties as identical, with an identical place of business. 3B is a Texas for-profit corporation that lists Mr. Feldman as the director, president, secretary, and treasurer, and he is 3B's registered agent. The sole name on the door of the identical business addresses is "Rapid Settlements, Ltd." CP at 241-42. The employees at the location identified themselves as "Rapid" employees. *Id.*

¶21 In sum, a clear identity of control and ownership exists between RSL and 3B. Mr. Feldman is the beneficial

owner, sole director, and controlling officer of each entity. Rapid Management Corporation held itself out to third parties as the general partner of both RSL and 3B. Given all, the trial court correctly reasoned that substantial evidence showed RSL and 3B shared common control and ownership, and that the assets were transferred between the entities to avoid the creditor claims. Accordingly, the trial court correctly concluded 3B and RSL were one and the same.

## C. Setoff

¶22 The issue is whether the trial court erred in granting Symetra's setoff request.

¶23 "[W]hether mutual judgments may be satisfied by being set off against each other rests largely within the court's discretion . . . [;] the application to set off judgments should be made in equity and controlled by equitable principles." *Reichlin v. First Nat'l Bank in Montesano*, 184 Wash. 304, 314-15, 51 P.2d 380 (1934). Courts, however, have the equitable authority to set off claims between two parties against the claim of a third party if "it becomes necessary for a clear equity or to prevent irremediable injustice." 20 AM. JUR. 2D *Counterclaim, Recoupment, and Setoff* § 49, at 313 (2005); *see also Reichlin*, 184 Wash. at 315; *Darwish v. Harmon*, 91 Ohio App. 3d 630, 633 N.E.2d 546, 549 (1992).

¶24 In *Darwish*, the father of a child who was hit by a car while riding his bike brought suit on behalf of his son against the car driver. The driver brought a third party claim against the parents, alleging they had negligently instructed their son on the proper use of his bike and had failed to properly equip his bike with reflectors and lights. A jury found all three parties liable. The trial court offset the amount the driver owed to the child by the amount the parents owed the driver. The Court of Appeals of Ohio affirmed, concluding the setoff decision was discretionary. *Darwish*, 633 N.E.2d at 548.

¶25 Similarly, it was within the trial court's discretion to offset 3B's right to payment by Symetra's judgment against RSL because, as discussed above, the two were one and the same. Accordingly, the trial court did not abuse its discretion in ordering the setoff.

## D. Merger

¶26 The issue is whether the trial court wrongly merged two partnerships into one. 3B contends it was not liable for RSL's judgment under Texas law. 3B concedes this defense was not raised below.

¶27 Generally, appellate courts will not entertain issues raised for the first time on appeal. RAP 2.5(a); *Brundridge v. Fluor Fed. Servs., Inc.*, 164 Wn.2d 432, 441, 191 P.3d 879 (2008). The reason for this rule is to afford the trial court an opportunity to correct errors, thereby avoiding unnecessary appeals and retrials. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983). A defendant waives his right to assert an affirmative defense if he fails to raise the defense at trial. *City of Seattle v. Lewis*, 70 Wn. App. 715, 718-19, 855 P.2d 327 (1993). Because this defense was not raised below, it is waived.

¶28 Even so, when parties dispute choice of law, an actual conflict must exist between the laws before courts will engage in a conflict of laws analysis. *Erwin v. Cotter Health Ctrs., Inc.*, 161 Wn.2d 676, 692, 167 P.3d 1112 (2007). If an actual conflict exists, the court then determines which jurisdiction has the most significant relationship with the matter. *Seizer v. Sessions*, 132 Wn.2d 642, 650, 940 P.2d 261 (1997). Here, even if Texas law presents an actual conflict, Washington has the most significant relationship to this matter. The 2008 judgment is a Washington judgment, RSL filed the Reihs application in Washington, the 2005 order is a Washington order, Mr. Reihs is a Washington resident, Symetra is a Washington corporation, and RSL and 3B have significant contact with Washington. In sum, Washington law was properly applied.

## E. Full Faith and Credit

¶29 The issue is whether the trial court violated the full faith and credit clause of the United States Constitution.

¶30 We review constitutional issues de novo. *Citizens Protecting Res. v. Yakima County*, 152 Wn. App. 914, 919, 219 P.3d 730 (2009). Article IV of the United States Constitution requires the states to give full faith and credit to every other state's judicial proceedings. U.S. Const. art. IV, § 1. Congress prescribes the means of proving a judgment is entitled to such credit. A foreign state's judgment cannot reach beyond the settled controversy to control proceedings in other states by other parties asserting claims the merits of which the foreign state has not considered. *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 238, 118 S. Ct. 657, 139 L. Ed. 2d 580 (1998).

¶31 3B contends Symetra's Washington judgment against RSL would not be entitled to full faith and credit in Texas. Symetra was permitted to offset the payment it was required to make to 3B by the judgment amount owed by RSL because the court found RSL and 3B had mutuality of obligation. The full faith and credit clause does not preclude Symetra from offsetting what is owed to 3B by what RSL owes Symetra under Washington law because the involved companies are incorporated in different states. 3B offers no contrary authority. Accordingly, we conclude 3B's contention lacks merit.

¶32 Affirmed.

KULIK, C.J., and KORSMO, J., concur.