# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| THE SUMMIT HOMEOWNERS ASSOCIATION, a Washington state nonprofit corporation,<br><br>Appellant,<br><br>v.<br><br>GLENN R. OAKES and CINDY R. OAKES, husband and wife; UNKNOWN OCCUPANTS of the subject real property; and JOHN DOES 1-10, who are all other persons or parties unknown claiming any right, title, estate, lien, or interest in the subject real property described herein,<br><br>Respondents,<br><br>R. CRAIG GRIFFITHS and JUNE A. GRIFFITYS, husband and wife; THE DAVEY TREE EXPERT COMPANY, a foreign for profit corporation; and DOES 1 to 10, inclusively,<br><br>Third Party Defendants. | No. 77893-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br><br><br><br><br><br><br>FILED: July 1, 2019 |

APPELWICK, C.J. — The Oakes prevailed on a counterclaim for timber trespass against the Summit Homeowners Association. Summit argues that the trial court erred in awarding the Oakes attorney fees under a fee provision of Summit's CC&Rs. It also argues that the trial court erred in trebling damages other than the amount awarded for tree removal. It asserts that the trial court abused its discretion in declining to offset the judgment in favor of the Oakes against a

previous judgment against the Oakes. And, it argues that the trial court imposed an improper interest rate on the judgment. We affirm.

FACTS

Glenn and Cindy Oakes own property within the Summit development, controlled by the Summit Homeowners Association. On March 31, 2016, Summit filed a complaint against the Oakes for breach of its Declaration of Covenants, Conditions, and Restrictions (CC&Rs), damages, appointment of receiver, and lien foreclosure. In a separate lawsuit, Summit had already obtained a judgment against the Oakes for their failure to comply with the CC&Rs.

The Oakes answered and brought counterclaims for declaratory judgment, injunctive relief, damages for timber trespass under RCW 64.12.030, and various other claims for damages. The Oakes also brought counterclaims against third parties—Craig and June Griffiths, and Davey Tree Expert Company (DTEC). Summit moved for summary judgment on its claims. The Oakes amended their answer and counterclaims, proceeding solely on the timber trespass claim. The trial court granted Summit's motion for summary judgment in part. After the trial court partially granted Summit's motion, the only remaining claims in the case were the Oakes's timber trespass claims against Summit and DTEC. Before trial, the Oakes settled with DTEC and dismissed the claims against it.

Summit moved again for summary judgment, this time on the sole remaining claim of timber trespass. Summit argued that timber trespass did not apply because its actions were authorized by its CC&Rs. The Oakes's claim proceeded to trial. Ultimately, the jury returned a verdict for the Oakes, finding that Summit

committed willful timber trespass. The jury awarded $530 in tree damages, $2500 in other property damages, and $0 for emotional distress.

The Oakes moved for an entry of judgment and an award of attorney fees under the CC&Rs. Summit opposed the motion. In granting the Oakes's motion for attorney fees, the trial court stated,

> The Oakes prevailed in a jury trial for damages to a cottonwood tree. The facts are that during Summit's action to lawfully cut trees in enforcement of the CC&Rs, a cottonwood tree was unlawfully cut on [a Native Growth Protection Area/Easement]. During the trial, it was clear that someone was responsible for trespass and cutting of the cottonwood tree, and the question was whether Summit had any responsibility. Summit was found 50% liable, and [its] behavior was found to be willful.
>
> The question is whether under the Amended and restated Declaration for the Summit Homeowner's Association . . . the Oakes may obtain a judgment for fees and costs. The cause of action was only as to the trespass action. Summit makes a number of arguments that the Oakes'[s] claim is not made under the CC&Rs and is not a counterclaim in the enforcement action. That is not determinative.
>
> The CC&R language drives the result. The language states fees and costs may be awarded to the prevailing party "in any judicial action . . ." (see 10.5) which is so broad that it would appear to include the timber trespass claim here. The entire claim was about whether or not, in the enforcement of the CC&Rs, Summit trespassed while enforcing its rights. Clearly, the jury found that it did, and did so intentionally. There was evidence that Board member(s) pressured Davey Tree to go in and cut down the cottonwood.
>
> The Oakes are entitled to their fees under, section 10.5 of the CC&Rs.

Because the jury found Summit 50 percent at fault, the court reduced the fee amount the Oakes requested, ultimately awarding $23,375 in fees and costs. The court also held that the Oakes were entitled to treble damages, for a total underlying damage award of $4,454. Summit moved for reconsideration. The trial

3

court denied the motion. The Oakes moved for entry of judgment. Summit opposed the entry of judgment for the attorney fees and alternatively requested a setoff based on a previously entered judgment against the Oakes. The trial court entered judgment in favor of the Oakes, ordering principle judgment of $4,454 and attorney fees and costs of $23,375, for a total judgment value of $27,829. It also ordered a postjudgment interest rate of 12 percent. Summit appeals.

## DISCUSSION

Summit makes four arguments. First, it argues that the trial court erred in awarding the Oakes attorney fees under its CC&Rs because the timber trespass statute does not provide for attorney fees. Second, it argues that the trial court erred in trebling damages unrelated to the value of the tree removed. Third, Summit alternatively argues that the trial court erred by declining to offset the judgment awarded to the Oakes against a previous judgment in Summit's favor. Fourth, Summit argues that the trial court erred in imposing an improper interest rate on its judgment for the Oakes.

I. <u>Attorney Fees</u>

Summit argues first that the trial court erred in awarding the Oakes attorney fees under the CC&Rs. It points out that the timber trespass statute does not contain a provision for attorney fees. Consequently, it contends that, because the Oakes prevailed at trial solely on their timber trespass counterclaim, they cannot benefit from the contractual attorney fee provision of the CC&Rs, which were not implicated in the timber trespass claim.

4

A. <u>Standard of Review</u>

Whether a party is entitled to an award of attorney fees is a question of law and is reviewed de novo on appeal.[1] <u>Durland v. San Juan County</u>, 182 Wn.2d 55, 76, 340 P.3d 191 (2014). The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity. <u>Id.</u> Whether a particular statutory or contractual provision, or recognized ground in equity authorizes an award of attorney fees is a legal question. <u>Tradewell Grp., Inc. v. Mavis</u>, 71 Wn. App. 120, 126, 857 P.2d 1053 (1993).

B. <u>Timber Trespass</u>

The statute prohibiting timber trespass provides,

> Whenever any person shall cut down, girdle, or otherwise injure, or carry off any tree, including a Christmas tree as defined in RCW 76.48.020, timber, or shrub on the land of another person, or on the street or highway in front of any person's house, city or town lot, or cultivated grounds, or on the commons or public grounds of any city or town, or on the street or highway in front thereof, without lawful authority, in an action by the person, city, or town against the person committing the trespasses or any of them, any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030.

No statute provides for attorney fees in a timber trespass action. <u>Int'l Raceway, Inc. v. JDFJ Corp.</u>, 97 Wn. App. 1, 8, 970 P.2d 343 (1999).

---

[1] The Oakes assert at the outset that Summit failed to provide an adequate record for review, because it did not designate any portion of the trial record to this court. It is a question of law, not fact, whether the trial court erred in determining that the Oakes were entitled to an award of fees on their timber trespass action. We can decide the issue before this court on the record Summit designated.

5

## C. CC&Rs

Summit asserts that the trial court erred in awarding attorney fees under the CC&Rs. It argues that the Oakes's timber trespass action was not based on the contract, but a statutory intentional tort. And, Summit asserts that its CC&Rs provides for attorney fees related only to enforcing compliance with the governing documents or a board decision.

The trial court found that the Oakes were entitled to fees under section 10.5 of the CC&Rs. That section states, in part,

> In any judicial action to enforce compliance with the Governing Documents or a Board Decision, the prevailing party, including the Association, shall be entitled to recover from the non-prevailing party, whether or not the action proceeds to judgment, its costs and a reasonable sum for attorneys' fees incurred in connection with the action, in addition to taxable costs permitted by law.

RCW 4.84.330 authorizes attorney fees to the prevailing party in an action on a contract containing an attorney fee provision. 4518 S. 256th, LLC v. Karen L. Gibbon, P.S., 195 Wn. App. 423, 446, 382 P.3d 1 (2016), review denied, 187 Wn.2d 1003, 386 P.2d 1084 (2017). This statute may apply if the contract containing the attorney fee provision is central to the controversy. Id. An action is on a contract for purposes of a contractual attorney fees provision if the action arose out of the contract and if the contract is central to the dispute. Edmonds v. John L. Scott Real Estate, Inc., 87 Wn. App. 834, 855, 942 P.2d 1072 (1997).

On appeal, Summit states that the Oakes did not sue for breach of the CC&Rs, but sued for the intentional tort of timber trespass. It argues that it is "inconsistent with the purpose of the contractual term [for attorney fees] to apply it

6

to a separate claim for an intentional tort." But, below, Summit answered the Oakes's claim of timber trespass using the CC&Rs as a shield. Its affirmative defensives included,

> 1.5 The Oakes[] have failed to follow the dispute resolution procedure contained in the Governing Documents.
>
> . . . .
>
> 1.8 The Oakes were on notice of the terms of the recorded Association Governing Documents in purchasing their lot in the Summit Community. The Oakes thereby accepted the terms of those Governing Documents in purchasing their Lot and their property rights are restricted by the clear terms of those documents.
>
> . . . .
>
> 1.12 The Oakes'[s] breach of contract in violating the Association's governing documents bars the Oakes'[s] claims based on violation of those same documents and further the governing contractual documents in this case bar any claims for trespass and this lawsuit is meritless.
>
> . . . .
>
> 1.22 Summit Homeowners Association acted with lawful authority under the Governing Documents. While expressly denied, if trespass is shown, Summit Homeowners Association did not act willfully or intentionally, only casually or involuntarily under RCW 64.12.040.

Summit also stated in its motion for summary judgment,

> The Oakes['s] suit is expressly barred under the Covenants, Conditions, and Restrictions associated with membership in the Summit Homeowners Association. . . .
>
> This case arises out of the failure of the Oakes to maintain their property allowing overgrown vegetation in violation of contractual view impairment policies requiring Summit to intervene. The complaints on this limited issue date back to at least 2008. As a result of years of neglect by the Oakes, Summit hired Davey Tree to remediate the horrible conditions on the Oakes'[s] property. . . .

> . . . The Oakes are contractually bound to abide by the CC&Rs. The CC&Rs prohibit a homeowner from bringing a trespass suit against the Association or its agents while performing remedial maintenance or enforcement actions, such as the removal of vegetation or the massive cottonwood which was removed from the Oakes'[s] property.
>
> . . . .
>
> In practical terms, this case involves enforcement of the CC&Rs and View Impairment Policies by a homeowners association. It does not involve the typical removal and profitable sale of valuable timber that would normally implicate the timber trespass statute.

(Footnote and citation omitted.)

Judicial estoppel is an equitable doctrine that precludes a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538, 160 P.3d 13 (2007). There are three core factors to consider: (1) whether the later position is clearly inconsistent with the earlier position; (2) whether judicial acceptance of the second position would create a perception that either the first or second court was misled by the party's position; and (3) whether the party asserting the inconsistent position would obtain an unfair advantage or imposes an unfair detriment on the opposing party if not estopped. Ashmore v. Estate of Duff, 165 Wn.2d 948, 951-52, 205 P.3d 111 (2009).

Summit argued to the trial court that its actions were justified under the CC&Rs. It used the document as a defense against the Oakes's timber trespass claim. It lost. It is incongruent for Summit to now assert that the timber trespass action is unrelated to the CC&Rs.

Summit acknowledges that "[t]o award fees under a separate tort action, the contract must be central to the dispute." (Boldface omitted.) Summit relies on Boguch v. Landover Corp., 153 Wn. App. 595, 224 P.3d 795 (2009). In Boguch, this court stated,

> A prevailing party may recover attorney fees under a contractual fee-shifting provision such as the one at issue herein only if a party brings a "claim on the contract," that is, only if a party seeks to recover under a specific contractual provision. If a party alleges breach of a duty imposed by an external source, such as a statute or the common law, the party does not bring an action on the contract, even if the duty would not exist in the absence of a contractual relationship.

Id. at 615.

There, the plaintiff entered into an exclusive sale and listing agreement for the sale of his property. Id. at 601. The plaintiff then sued the listing agents for negligence, breaching their professional duties under chapter 18.86 RCW, and breach of contract. Id. at 603. The trial court dismissed the claims on summary judgment and awarded the defendants attorney fees. Id. at 606-07. Partially reversing[2] the award of attorney fees, this court reasoned,

> Although [the defendant's] duty to Boguch arose because the parties entered into a contractual relationship, the listing agreement itself does not specify the duty of care that the Realtor must provide. To the contrary, the common law and chapter 18.86 RCW imposed a duty to exercise reasonable care on the Realtors. Although the statute may be read as being incorporated into the listing agreement by reference, it does not follow that any act taken in fulfillment or derogation of that duty constitutes specific contractual performance or breach thereof.

---

[2] This court determined that, while Boguch's realtor could not recover fees incurred for time spent defending against Boguch's tort claims, she could recover fees incurred in defending against his breach of contract claim. 153 Wn. App. at 600. The court remanded for a recalculation of the fee award. Id.

Id. at 600, 617.

Boguch is distinguishable. Summit sued the Oakes for breaching its CC&Rs. The Oakes's counterclaim for timber trespass was the sole issue that went to trial. Summit argued that timber trespass did not apply because its actions were authorized by the CC&Rs. Unlike Boguch, the CC&Rs were central to the dispute throughout the proceeding, and Summit took that exact position below.

Summit also argues that the Oakes's timber trespass claim was a permissive counterclaim, with an outcome independent of Summit's claims. It argues that this court should note that the Oakes did not mention the CC&Rs in their cause of action for timber trespass. And, it asserts that the Oakes elected a specific remedy when they chose to pursue a statutory claim of timber trespass, and in doing so precluded a subsequent claim for attorney fees.

But, Summit acted to cut the trees under a claim of authority of the CC&Rs. The Oakes claim was that its action was a trespass, not an authorized action. Relying on the CC&Rs, Summit defended on the basis that its action was not a trespass. The CC&Rs were clearly central to the dispute below. If a tort action is based on a contract central to the dispute containing an attorney fee provision, the prevailing party may receive attorney fees. Hill v. Cox, 110 Wn. App. 394, 411, 41 P.3d 495 (2002).

At oral argument, Summit raised for the first time C-C Bottlers, Ltd. v. J.M. Leasing, Inc., 78 Wn. App. 384, 896 P.2d 1309 (1995). In C-C Bottlers, a party was not entitled to attorney fees for successfully defending against the opponent's permissive counterclaims. Id. at 387-88, 390. C-C Bottlers Ltd. (CCB) sued J.M.

Leasing Inc. (JML) to collect two delinquent promissory notes. Id. at 386. Both notes provided for recovery of costs and fees of collection, including suit. Id. JML counterclaimed, alleging securities fraud. Id. The trial court ruled in favor of CCB on the notes on summary judgment, and dismissed the counterclaims following a bench trial. Id. It awarded CCB fees for the entire litigation after finding that JML's counterclaims were "'substantially interwoven and inseparable'" from CCB's action on the notes. Id. at 386-87.

The court disagreed. Id. at 390. It noted that the issue presented "turns on the pleadings rather than the factual basis for those pleadings or the way in which this case was tried." Id. at 387. The court described JML's securities fraud claims as "independent and unrelated claims asserted permissively" and noted that the fraud claims did not affect and would not affect the outcome of the promissory note claims. Id. at 387-88. It also observed that "JML's pleadings and trial brief both assert the securities fraud counterclaims strictly as a setoff against any judgment on the notes." Id. at 389. The court recognized that contractual language authorizing fees for "any litigation" involving rights under the contract establishes only a right to fees incurred in litigation of contract-related claims. Id.

Here, as in C-C Bottlers, the Oakes's counterclaim for timber trespass was permissive. It was independent from, and did not affect the outcome of, Summit's original claims. But, unlike C-C Bottlers, Summit's affirmative defense to the Oakes's timber trespass claim was not permissive. And, it was substantially interwoven with the CC&Rs. Also, in its amended answer to the Oakes's amended counterclaim, Summit specifically invoked the CC&Rs when it asked for attorney

11

fees and costs as provided for under its governing documents. Summit requested, "[A]n award of costs and attorneys' fees as provided for or allowed by law, including, but not limited to, the Association's Governing Documents, RCW 64.38.050, and common law."

Summit contends that the issue of whether attorney fees are proper here "turns on the pleadings." Though the trial court focused on the facts, which demonstrated the tort and contract claims were interwoven, its conclusion was correct. Considering the pleadings, Summit's affirmative defense, and its request for attorney fees under the CC&Rs in its amended answer to the Oakes's counterclaim, we conclude as a matter of law that the tort action was an action on the contract.

The trial court did not err in awarding the Oakes attorney fees.

D. Award Amount

Summit also contends that the trial court not only erred in awarding the attorney fees generally, but that it also erred in determining the amount of the award. It argues that the trial court "granted the Oakes a blanket fee award including fees dating back to January 2014 and fees unrelated to the timber trespass claim."

An appellate court will uphold an attorney fee award unless it finds the trial court manifestly abused its discretion. Berryman v. Metcalf, 177 Wn. App. 644, 656-57, 312 P.3d 745 (2013). A trial court initially determines attorney fees and costs using the "lodestar" calculation, multiplying the total number of hours reasonably expended in the litigation by the reasonable hourly rate. Clausen v.

Icicle Seafoods, Inc., 174 Wn.2d 70, 81, 272 P.3d 827 (2012). Once the lodestar has been calculated, the court may adjust the fee to reflect factors not considered yet. Id. The two categories for adjustment are based on whether the fee was contingent on the outcome and the quality of work performed. Id. The party requesting an adjustment has the burden to show the deviation is justified. Id.

Below, the Oakes requested $51,598 in fees and costs. Summit argued that, if the court were to award fees, it should reduce the requested amount by $25,181. Summit has not alleged the lodestar method was not followed, only that additional charges should have been excluded. The trial court ultimately awarded $23,375 in fees and costs. The trial court imposed an award that was $3,043 less than the amount for which Summit argued in the event fees were imposed.

Summit has not met its burden of showing how the award amount was improper. The trial court did not abuse its discretion in determining the attorney fee award amount.

II.    Treble Damages

Summit argues second that the trial court erred in trebling damages that encompassed more than what the jury awarded for the removal of the cottonwood tree. Summit asserts that the principle judgment, after trebling, should be $2,045, not $4540. Summit cites Lytle Logging & Mercantile Co. v. Humptulips Driving Co., 60 Wn. 559, 561, 111 P. 774 (1910).

The 1910 State Supreme Court stated, "While the appellant in the present action claimed treble damages for the entire trespass it is apparent under the

statute that treble damages can only be allowed, if at all, for cutting down and carrying off the timber." Id.

Summit's argument requires this court to interpret a statute, and the proper review is de novo. Pendergrast v. Matichuk, 186 Wn.2d 556, 568, 379 P.3d 96 (2016).

The timber trespass statute provides in relevant part,

> Whenever any person shall cut down . . . any tree . . . on the land of another person . . . without lawful authority, in an action by the person . . . against the person committing the trespasses . . . any judgment for the plaintiff shall be for treble the amount of damages claimed or assessed.

RCW 64.12.030.

The purpose of the timber trespass statute is well established: to (1) punish a voluntary offender, (2) provide treble damages, and (3) discourage persons from carelessly or intentionally removing another's merchantable shrubs or trees on the gamble that the enterprise will be profitable if actual damages only are incurred. Pendergrast, 186 Wn.2d at 567. In the time since 1910, our Supreme Court has interpreted the statute to permit recovery for emotional distress. Birchler v. Castello Land Co., 133 Wn.2d 106, 117, 942 P.2d 968 (1997). And later, in Pendergrast, the court held that an award for emotional distress could also be trebled. 186 Wn.2d at 568. It stated, "[U]nder the plain language of the statute, [the plaintiff] is entitled to treble damages on all damages awarded under the timber trespass statute." Id.

Here, the jury awarded the Oakes $530 in tree damages and $2,500 in other property damages. It found Summit 50 percent at fault. The trial court halved the total amount of damages awarded, for an amount of $1,515, and then trebled it for a total of $4,545. The trial court did not err in trebling damages.

III. Setoff

Summit contends third that the trial court erred by declining to offset the judgment amount it awarded to the Oakes against the amount the Oakes owed Summit from a previous judgment.

Whether mutual judgments may be satisfied by being set off against each other rests largely within the court's discretion; the application to set off judgments should be made in equity and controlled by equitable principles. In the Matter of the Application by Rapid Settlements, Ltd., 166 Wn. App. 683, 694, 271 P.3d 925 (2012). This court reviews a trial court's decision to grant an offset for abuse of discretion. Eagle Point Condo. Owners Ass'n v. Coy, 102 Wn. App. 697, 701, 9 P.3d 898 (2000).

Below, Summit sought an offset based on a previous judgment in its favor on sanctions and attorney fees. In entering judgment for the Oakes, the trial court did not set off the judgment amount or address Summit's request. At the time the trial court entered the judgment, Summit had already appealed to this court. Cognizant of the appeal, the trial court did not abuse its discretion in declining to offset the judgment amount.

15

IV.   Judgment Interest Rate

Summit argues last that the trial court erred in imposing an interest rate of 12 percent per annum on the judgment. Relying on RCW 4.56.110(3)(b), Summit asserts that the interest rate should be 2 percentage points above the current prime rate, or 6.5 percent.

RCW 4.56.110(1) provides, "Judgments founded on written contracts, providing for the payment of interest until paid at a specified rate, shall bear interest at the rate specified in the contracts: PROVIDED, That said interest rate is set forth in the judgment."

The CC&Rs in this case provide for an interest rate of 12 percent. As reasoned above, this case is "on a contract" for purposes of applying RCW 4.84.330. The same reasoning applies to the trial court's decision to apply the interest rate set forth in the CC&Rs.

The trial court did not err in imposing a 12 percent interest rate on the judgment.

V.   Attorney Fees on Appeal

Pursuant to RAP 18.1, the Oakes request that this court award attorney fees and costs incurred on appeal.

A contract provision that authorizes attorney fees below authorizes attorney fees on appeal. Nw. Cascade, Inc. v. Unique Constr., Inc., 187 Wn. App. 685, 705, 351 P.3d 172 (2015).

Above, we affirmed the trial court's award of attorney fees to the Oakes under the fee provision of the CC&Rs. For the same reason, we find that the

16

Oakes are entitled to attorney fees and costs on appeal, pursuant to compliance with RAP 18.1(d).

We affirm.

WE CONCUR: