IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| ROBERTO CASTRO, Personal Representative of the Estate of EVELYN L. STENNES, | ) ) ) ) | No. 39847-1-III |
| Respondent, | ) ) | |
| v. | ) ) | |
| ALEX THOMASON, individually and ALEXANDER HARRIS THOMASON and KATY ANNE THOMASON, a marital community; and ALEX GROUP, LLC, | ) ) ) ) ) ) | |
| Appellants. | ) ) | UNPUBLISHED OPINION |
| | ) ) | |
| ALEX THOMASON, individually and ALEXANDER HARRIS THOMASON and KATY ANNE THOMASON, a marital community; and ALEX GROUP, LLC, | ) ) ) ) ) | |
| Appellants, | ) ) | |
| v. | ) ) | |
| STEPHANIE TAYLOR, in her capacity as the Personal Representative of the Estate of BERT STENNES, | ) ) ) ) | |
| Respondent. | ) | |

PENNELL, J. — Alex Thomason, individually and together with his wife, Katy

Anne Thomason, and his company, Alex Group, LLC (collectively Alex Thomason)

appeal from a summary judgment order dismissing their third-party complaint against

the Estate of Bert Stennes. We affirm.

## FACTS[1]

Evelyn Stennes died in 2009, after 50 years of marriage to Bert Stennes. At

the time of her death, the Stennes marital community held assets worth $3.5 million.

Ms. Stennes's will directed the estate's personal representative to place her portion of the

marital assets into an exemption equivalent trust or a marital trust. The will nominated

Bert Stennes as personal representative and, after his appointment by the probate court,

Mr. Stennes served in that capacity until his death in 2017. During his time as personal

representative, Mr. Stennes did not abide by the terms of his wife's will. He neither

divided the community assets nor funded a trust as directed by the terms of the will.

In 2012, Mr. Stennes became acquainted with attorney Alex Thomason. At the

time, Mr. Thomason was 37 years of age and Mr. Stennes was 88. Mr. Thomason and

Mr. Stennes became friends. Mr. Thomason also served as Mr. Stennes's legal counsel.

---

[1] Some facts are drawn from this court's opinion in a previous appeal from the same superior court action. *See Castro v. Thomason*, No. 37995-7-III (Wash. Ct. App. Nov. 23, 2021) (unpublished), https://www.courts.wa.gov/opinions/pdf/379957_unp.pdf.

On April 18, 2013, Mr. Stennes opened an investment account under the name of Ms. Stennes's estate. He deposited $775,528.85 in liquid assets into the account. Less than one week later, Mr. Stennes withdrew $160,000.00 from the account. He then loaned $400,000.00 to Mr. Thomason so Mr. Thomason could purchase property adjacent to Mr. Stennes's land. Mr. Thomason signed a promissory note to evidence the loan. The loan was interest free for seven years. In turn, Mr. Thomason leased some of the purchased property to Mr. Stennes for development into an orchard.

On November 16, 2016, Bert Stennes and Alex Thomason executed an "Agreement Cancelling Note and Terminating Joint Operating Agreement." Clerk's Papers (CP) at 52-61. Mr. Thomason was serving as Mr. Stennes's legal counsel at the time. The agreement canceled the outstanding principal of $186,672.00 on the $400,000.00 loan. The agreement also included the following clause:

> 7. <u>Indemnification and Hold Harmless</u>. [Bert Stennes and Stennes Point Orchards, Inc.] and [Alex Thomason, a married person; Alex Group, LLC; and PJA Holdings, Inc.] agree to indemnify and hold each other harmless against any and all claims, demands, suits, actions, expenses, accountants' fees, attorneys' fees, expert witness fees, and all losses and damages of every kind and nature, arising out of or in connection with the termination of the 2013 Note, 2014 Lease, 2015 Amendment and this agreement.

*Id*. at 53.

3

Also on November 16, 2016, Mr. Stennes amended his last will and testament. The will exercised his power of appointment under Ms. Stennes's trust to direct the proceeds of Evelyn Stennes's trust to be incorporated into a new trust created by his will: the Stennes Family Trust. The Stennes Family Trust was created to benefit the Stenneses' three children and a friend of Mr. Stennes. Mr. Stennes's will stated the funds from Evelyn Stennes's trust would be disbursed only to their three children. Mr. Stennes's amended will also included three clauses that: (1) terminated business transactions with Mr. Thomason, (2) released any claims by Mr. Stennes's estate related to Mr. Stennes's business transactions with Mr. Thomason, and (3) directed Mr. Thomason be defended and indemnified from any claims made by Mr. Stennes's descendants or beneficiaries of the Stennes Family Trust.

Bert Stennes died in 2017. His will was admitted into probate and, in 2019, Stephanie Taylor was appointed personal representative of his estate. Robert Castro was appointed as a successor personal representative of Evelyn Stennes's estate in 2018.

Mr. Castro's predecessor, as personal representative of Evelyn Stennes's estate, filed a creditor's claim with Bert Stennes's estate, alleging Mr. Stennes had breached his fiduciary duties as personal representative. The funds transferred by Mr. Stennes to Mr. Thomason were identified as an example of the breach of fiduciary duties.

4

After Mr. Castro was appointed as personal representative, he initiated litigation against Mr. Thomason in Okanogan County Superior Court, seeking recovery of $160,000 in misappropriated funds. Mr. Castro's complaint articulated three causes of action: (1) equitable lien, (2) unjust enrichment and constructive trust, and (3) accounting. The appeal before us arises from this litigation.

Mr. Castro, joined by Ms. Taylor in her capacity as the personal representative of the estate of Bert Stennes, later filed a separate lawsuit against Mr. Thomason in Chelan County Superior Court under the same theories as the Okanogan County litigation. In response to written discovery requests from Mr. Thomason, the estates produced a joint prosecution agreement, later replaced by a confidentiality agreement, specifying the joint participants' desire to share privileged and confidential information amongst themselves to promote their "common interests, common purpose and mutual benefit" in connection with the cases against Mr. Thomason. CP at 227. The estates also entered into a loan agreement where Mr. Stennes's estate would fund the claims pursued by Evelyn's estate against Mr. Thomason.

Within his amended answer to the complaint in the Okanogan County case, Mr. Thomason asserted a third-party complaint against Stephanie Taylor, in her capacity as the personal representative of Bert Stennes's estate. Mr. Thomason averred the Bert

5

Stennes estate had a duty to defend and indemnify Mr. Thomason against claims by

Evelyn Stennes's estate pursuant to the 2016 agreement and the terms of Bert Stennes's

will. Ms. Taylor denied any such duty existed and moved under CR 12(b)(6) to dismiss

Mr. Thomason's complaint. The trial court granted Ms. Taylor's motion, reasoning the

language in the 2016 agreement and Bert Stennes's will did not apply to the causes of

action asserted by Evelyn's estate. The trial court also certified under CR 54(b) that its

order dismissing the third-party complaint was a final judgment as to Mr. Thomason's

claims.

Mr. Thomason appealed and this court affirmed in part in an unpublished decision.

*See Castro v. Thomason*, No. 37995-7-III (Wash. Ct. App. Nov. 23, 2021) (unpublished),

https://www.courts.wa.gov/opinions/pdf/379957_unp.pdf. We agreed with the trial court

that Bert Stennes's estate did not owe a duty to Mr. Thomason to defend against claims

made by Evelyn Stennes's estate. But we reversed the trial court's dismissal of

Mr. Thomason's indemnification claim, opining that Mr. Thomason had stated a viable

claim for contractual indemnification pursuant to the terms of the 2016 termination

agreement. Because we held the termination agreement arguably imposed a duty to

indemnify, we declined to address whether such a duty also existed under the terms of

Mr. Stennes's will. The matter was remanded for further proceedings.

6

On remand, the Bert Stennes estate moved for summary judgment dismissal of Mr. Thomason's surviving indemnification claim, arguing it was time barred under Washington's nonclaim statute, RCW 11.40.051. Mr. Thomason did not dispute he failed to file a creditor claim within the two-year time period specified by RCW 11.40.051. Nevertheless, he argued he was not subject to the two-year limitation period because he had asserted a defensive setoff claim that is not subject to the nonclaim statute's time limitation.

The trial court agreed with Ms. Taylor and dismissed the remainder of the third-party complaint. The court again certified its order under CR 54(b) as a final judgment, and Mr. Thomason now appeals.

## ANALYSIS

Mr. Thomason contends his indemnity claim against Bert Stennes's estate is not time barred by the nonclaim statute because it is merely an offset claim, asserted in response to a claim against him by "*the*" estate. Br. of Appellant[s] at 1-2. Although the litigation in Okanogan County against Mr. Thomason was actually initiated by Evelyn Stennes's estate, not Bert Stennes's estate, Mr. Thomason claims the two estates are "so intertwined, both factually and legally, that they should be considered a single entity." *Id*. at 2. Thus, Mr. Thomason argues he should be able to offset the claims made by

Evelyn Stennes's estate pursuant to the contractual indemnification clause applicable to Bert Stennes's estate, regardless of the two-year limitations period set by RCW 11.40.051.

Our review of a trial court's summary judgment order is de novo. *Highline Sch. Dist. No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976). As explained further below, we agree with the trial court's summary judgment disposition of Mr. Thomason's third-party indemnification claim.

Mr. Thomason's argument that the two Stennes estates should be treated as one is rooted in our decision of *In re Rapid Settlements, Ltd.*, 166 Wn. App. 683, 271 P.3d 925 (2012). In the *Rapid Settlements* case, Symetra Life Insurance Co. succeeded in obtaining a judgment against Rapid Settlements for attorney fees after successfully opposing an annuity transfer application in both the trial court and on appeal. *Id*. at 686-88. Rapid Settlements later prevailed against Symetra in a separate, unrelated annuity transfer application. *Id*. at 688-89. After Symetra moved in the trial court for relief from judgment, a separate company, RSL-3B-IL, Ltd. (3B), intervened and asserted that: (1) Rapid Settlements was no longer in business, and (2) 3B was Rapid Settlements' assignee of the annuity payment Symetra owed. *Id*. at 689. 3B did not otherwise object to the evidence submitted by Symetra in support of its motion for relief from judgment. *Id*.

Symetra successfully argued in the trial court that a setoff against 3B was appropriate because 3B was the alter ego of Rapid Settlements. *Id*. at 689-90. On appeal, this court agreed with Symetra and held it was "within the trial court's discretion to offset 3B's right to payment by Symetra's judgment against [Rapid Settlements] because . . . the two [companies] were one and the same." *Id.* at 694-95.

Here, unlike the circumstances in *Rapid Settlements*, the two purported entities are not the same. The two estates were created by separate testamentary documents and came into existence at different times. Furthermore, Evelyn Stennes's estate has a claim against Bert Stennes's estate for breach of fiduciary duty. This claim is based on the actions, taken by Bert Stennes and Alex Thomason after Evelyn Stennes's death, that diverted funds from being placed in Evelyn Stennes's estate. We recognize Bert Stennes's estate may seek to defend against the claims made by Evelyn Stennes's estate by assigning blame to Mr. Thomason. But that does not mean the two estates are one and the same. The interests of Evelyn Stennes's estate would be eviscerated if Mr. Stennes's allegedly improper dealings with Mr. Thomason could be used to offset the effort by Evelyn Stennes's estate to be made whole.

Mr. Thomason points to the joint prosecution and confidentiality agreements entered into by the personal representatives of the two Stennes estates as evidence they

9

are operating as the same entity. We disagree. These agreements merely recognize the estates have mutual claims against Mr. Thomason, arising out of analogous facts. This does not change the fact that Evelyn Stennes's estate also has a separate and distinct claim against Bert Stennes's estate. Had Mr. Castro intended to disregard the claim against Bert Stennes's estate in signing the joint prosecution and confidentiality agreements, this would have violated his duties to Evelyn Stennes's estate. We will not interpret the agreements in a way that leads to this kind of absurd result.

We further note that, under *Rapid Settlements*, the decision to allow for an offset in liability based on a shared identity is rooted in equity. As we explained, "Courts . . . have the equitable authority to set off claims between two parties against the claim of a third party if 'it becomes necessary for a clear equity or to prevent irremediable injustice.'" *Id*. at 694 (quoting 20 AM. JUR. 2D *Counterclaim, Recoupment, and Setoff* § 49, at 313 (Am. Law Inst. 2005)). Mr. Thomason has not shown it would be unjust to deny indemnification in response to claims by Evelyn Stennes's estate.

CONCLUSION

Mr. Thomason is not entitled to avoid the two-year limitations period in Washington's nonclaim statute by characterizing his indemnification claim against Bert Stennes's estate as an offset of the claims made by Evelyn Stennes's estate.

No. 39847-1-III
*Castro v. Thomason*

The summary judgment dismissal of the third-party complaint against Bert Stennes's estate is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Fearing, J.